THE STATE v. POTTER, *Appellant.*

DIVISION TWO.

1. **Criminal Law:** PRACTICE: WITNESS. Where a witness for the state in a criminal prosecution stated that she had been but was not then the wife of the defendant, and her testimony otherwise was corroborative not only of what was proved by other witnesses but conceded by defendant, it will be held not to have prejudiced him.

2. ———: FLIGHT. While the flight of one accused of crime raises a presumption of his guilt, yet he may explain it upon other grounds, if he can, and in such case it is for the jury under all the circumstances to find why he fled.

·3.    ———— : PRACTICE : NEW TRIAL.  A new trial will not be granted upon the ground of the discovery of evidence which is only cumulative.

·4.    ———— : ———— : ————.  A new trial will not be granted because of the discovery of statements made by a witness after the trial tending to impeach him.

*Appeal from Howell Circuit Court.*—HON. J. F. HALE, Judge.

AFFIRMED.

*J. W. Zevely* and *Silver & Brown* for appellant:

( 1 )  The evidence of Mrs. Potter was entirely irrelevant, and did not tend even to prove any pertinent hypothesis or issue in the case and its admission was erroneous.  *State v. Mix*, 15 Mo. 153 ; *State v. Wolf*, 15 Mo. 168 ; *State v. Thomas*, 99 Mo. 235.  ( 2 )  The instruction upon the subject of flight was wholly unsupported by the evidence, and the giving of it constituted reversible error.  *Rose v. Spies*, 44 Mo. 20 ; *Quinlivan v. English*, 44 Mo. 46 ; *McDermott v. Donegan*, 44 Mo. 85.  ( 3 )  The motion for new trial should have been sustained upon the ground of newly discovered evidence.  *State v. Ray*, 53 Mo. 345 ; *Pegram v. King*, ·2 Hawk. ( N. C.) 605 ; *Farvilius v. Cock*, 3 Burrows, 1771.

*John M. Wood*, Attorney General, for the State.

( 1 )  The indictment is sufficient.  *State v. Elvins*, 101 Mo. 243.  ( 2 )  The testimony of Mrs. Margaret Potter could not have prejudiced defendant.  ( 3 )  The instructions objected to have been approved by this ·court—the fourth, in *State v. Thomas*, 78 Mo. 327 ; the

seventh, in *State v. Gee*, 85 Mo. 649; the ninth, in *State v. Jones*, 86 Mo. 623; the tenth, in *State v. Melton*, 102 Mo. 683. (4) The newly discovered evidence set out in the motion for a new trial and in the affidavits was merely to impeach a witness. It does not appear that it would have produced a different result had a new trial been granted. The trial court, therefore, did not err in refusing to entertain the motion on this ground. *State v. Ray*, 53 Mo. 345; *State v. Laughlin*, 27 Mo. 111. In addition to this, it appears that the testimony set out in the affidavits would be inconsistent with the testimony of the defendant. (5) A juror cannot impeach his own verdict, and the court properly overruled the motion on this ground. *State v. McNamara*, 100 Mo. 100; *State v. Rush*, 95 Mo. 199, and cases cited.

THOMAS, J.—Defendant was indicted in Douglas county for a felonious assault as defined by section 1262, Revised Statutes, 1879, but on his application a change of venue was awarded to Howell county, whereupon a trial had in April, 1889, he was convicted of the crime charged and sentenced to imprisonment in the penitentiary for two years.

The state introduced evidence tending to prove that on the twenty-sixth day of November, 1886, Wm. Lewis, Jno. R. Teal and Jackson Garrison met at the home of Jno. Lewis, in Douglas county, and together left the home of said Jno. Lewis to hunt the latter's cattle; that their search for the cattle carried them to the house of Dr. J. S. Potter, the defendant; that when they arrived at Potter's, Jno. R. Teal was fifteen or twenty steps in advance of William Lewis, and that Dr. Potter came to his door with his gun; and Jno. R. Teal and his mother, the latter being at Potter's house, hallooed to Wm. Lewis to stop, that Dr. Potter was going to shoot him, but that Lewis came on fifteen or twenty steps before he stopped; that Dr. Potter then hallooed to him (Lewis) to get off his horse, that he

was going to shoot him, and that Lewis slipped off of his mare on the opposite side from Potter, and drew his pistol as he was getting down, and pointed it around under his horse's neck toward Potter and fired ; but that Potter fired the first shot, the shots coming so close together that it was difficult to distinguish which fired first; Potter's shot killed Lewis' mare, and the latter ran ; stooping forward he kept on running, Potter firing the remaining charge in his gun, and then four shots from a revolver, walking toward Lewis about ten steps during the time of firing ; that after the shooting Dr. Potter rode off in an easterly direction, and Lewis departed to the west.

The evidence further tended to show that if Lewis had stopped when first warned by Teal, and had retreated five or six steps, he would have been out of range of Potter's gun and around the corner of the house. The evidence further tended to show that defendant had made arrangements to leave Douglas county before the shooting occurred ; that he said he regretted killing the mare, as it was Lewis he wanted to kill ; that defendant made threats to kill Lewis; and that defendant's wife was not living with him.

The evidence on the part of the defendant tended to prove that the defendant, some time in November, 1886, was taken in the night time from his home by a lawless organization known as the "Bald Knobbers," and brutally beaten ; that Wm. Lewis was one of the party who did the whipping or beating ; and that at the time it was done Lewis and others threatened the defendant, that if he recognized any of the party and afterwards told who they were, they would kill him, the defendant.

The evidence further tended to show that Wm. Lewis and Jno. R. Teal, on the day of the shooting, were not in quest of the cattle of Jno. Lewis, but that they had gone to the home of the defendant to provoke a difficulty, and to kill him ; that Jno. R. Teal had admitted to

several people that he regretted that he had not stood up to Wm. Lewis in the enterprise they had on hand on the day of the shooting, as Lewis wanted him to do; that the defendant, notwithstanding the threats of the Bald Knobbers, had told several persons that Wm. Lewis was one of the party who had whipped him; that Hiram Teal and his wife, the father and mother of Jno. R. Teal, were at the home of defendant on the morning of the shooting, and remained there long enough to excite the suspicion of defendant that all was not right, and that they started to leave the house just as Wm. Lewis and Jno. R. Teal came up to it; that when defendant saw Wm. Lewis with a pistol and Jno. R. Teal coming up to his house, he was scared and thought they had come to kill him; that he stepped back in the house and got his gun to defend himself; that Wm. Lewis and not the defendant fired the first shot; that defendant did not move after the shooting with the intention to flee from justice, but that he had already sold and disposed of his effects, and made all necessary arrangements to leave before the shooting occurred, and that he was going to avoid trouble with the Bald Knobbers; and that he did not secrete himself after he did go away.

The court in its instructions to the jury properly defined the offense with which defendant was charged, and fully covered all the questions of law arising in the case including the right of self-defense.

Defendant urges three alleged errors for the reversal of the judgment.

I. The state called Margaret A. Potter as a witness, and, being asked if she was the wife of defendant, replied that she had been but was not then. The defendant objected to this testimony and duly saved his exceptions. The admission of this evidence, it is claimed, was prejudicial to defendant. There was no objection to her testifying on the ground that she was the wife of defendant, and she went on to say that she

was half a mile from the scene of the difficulty, and knew nothing of what occurred there except that she heard the firing of guns, but did not know who did it, or where it was. The defendant in his testimony conceded what all the evidence conclusively shows, that he did shoot at Lewis, and we cannot perceive how the testimony of Mrs. Potter could have operated to his injury. If her testimony had proved to be vital to the state's case, we would have been called upon to determine whether she was a competent witness at all, but her testimony being only corroborative of what was not only proved but conceded by defendant, we are relieved of the necessity of deciding this question. She was put on the stand as a witness. and was asked whether she was the wife of defendant, to which she replied that she was not then but had been. This course was very fair to defendant. If she was his wife, he could object to her giving evidence against him. He interposed no such objection, and it seems to us to require a long stretch of the imagination to hold that the state called her to prove as a substantive fact in the case that defendant and his wife were separated, or that if they were separated that this fact could affect the issues in the case. If the prosecuting attorney did call this witness to prove her separation from defendant, as a substantive fact in the case, it was very reprehensible in him, and, therefore, we will not indulge the presumption, in the absence of clear evidence in the record to the contrary, that he had such purpose. On the contrary we will infer that his object was to simply let the jury know who the witness was and her relation to the defendant to enable them to give proper weight to her testimony.

II. The second contention is that the court erred in instructing the jury on the question of defendant's flight because there was *no evidence* that he fled. The instructions on this subject are as follows: "The

court instructs the jury that flight raises the presumption of guilt, and if the jury believe from the evidence that the defendant, after the commission of the offense alleged in the indictment, fled from the state of Missouri, and tried to avoid arrest and trial for shooting at Lewis, then you may take this fact into consideration in determining his guilt or innocence.

"That while fleeing from justice is to be taken as an evidence of crime, a defendant has a right to show other good reasons for leaving if he can, and in this case the jury, in considering the evidence that defendant left immediately after the shooting affray, will also consider the evidence before them that he had already made all his arrangements to leave on that day; that he had been in trouble with the Bald Knobbers, and was in fear of violence from them, and that he returned openly and publicly to this state, and went into the practice of his profession."

Taken together these instructions present the question of flight very fairly under the evidence. There was evidence that defendant did leave the state. Why he left was a question for the jury under all the circumstances of the case.

III. In the third place a reversal of the judgment is asked on the ground that defendant discovered new evidence after verdict. Jno. R. Teal was a witness for the state and his connection with the difficulty will appear by the statement of facts given in this opinion. The newly discovered evidence was to the effect that Teal went to W. B. Jordan, and said: "It is all over now, and it makes no difference," and that he could now tell all about it, and went on to say that after they (meaning himself and William Lewis) rode up in front of Potter's door and Potter started back in the house, as he supposed after his gun, and Bill Lewis could not see Potter through the door, but shot at him through a crack and would have killed him, Potter, but he shot about one and one-half inches too low. This evidence

could have been introduced only to impeach Teal, and not as proof of the facts therein stated. Other evidence to impeach Teal on this point having been introduced, this would have been cumulative only, and a new trial will not be granted upon the discovery of cumulative evidence alone. *State v. Ray*, 53 Mo. 345; *State v. McLaughlin*, 27 Mo. 111; *State v. Woodward*, 95 Mo. 129; *State v. Butler*, 67 Mo. 59.

And, besides this, the statement alleged to have been made by Teal was made *after the trial*, and we know of no rule of law that would justify the granting of a new trial to let in *such* a statement made at *such* a time. Judgment affirmed. All concur.