## THE STATE v. WALTER MILLS, Appellant.

Division Two, December 4, 1917.

1. **INSTRUCTION: Assumption of Defendant's Guilt.** An instruction telling the jury that "flight raises the presumption of guilt, and if you believe from the evidence that the defendant, after having stabbed and killed Philip Carpenter," etc., where the stabbing was not admitted by defendant, but unequivocally denied by him, is erroneous, in that it assumes that defendant "stabbed and killed Philip Carpenter." Even though the great weight of the testimony and defendant's previous extra-judicial confession unerringly point to the falsity of his denial, it is still the province of the jury to decide whether or not it is false.

2. ————: **Flight.** It is proper to give an instruction on the subject of flight where the facts show that defendant four days after the stabbing of deceased left the scene of the crime and went to a distant city and was there shortly afterwards arrested at a place and amid environments which might well argue an attempt at concealment; but the instruction should aptly embody the explanation which defendant gives on the witness stand of his alleged flight, or reason for his presence in said city.

3. **IMPEACHMENT: Former Conviction in Police Court.** It was error to permit the defendant, being tried for a felony, to be asked

State v. Mills.

by the State on cross-examination, in an effort to impeach him as a witness, whether he had ever been convicted of a crime, and upon his denial to permit the State to ask him if he had not been convicted of vagrancy in the police court, and upon his further denial, to call the police judge, in rebuttal, and permit him to show by the records that defendant had been convicted of vagrancy in said court.

4. ——: ——: **Criminal Offense.** A conviction of vagrancy in a police court in violation of a city ordinance is not a conviction of a "criminal offense" within the purview of Sec. 6383, R. S. 1909. Those words are by the statute (Sec. 4925, R. S. 1909) confined to a conviction of a misdemeanor or felony in violation of a State law.

5. **INSTRUCTION ON MANSLAUGHTER: Failure to Give.** A failure to instruct on manslaughter in a murder case should be specifically assigned as error in the motion for a new trial.

6. ——: **When Authorized: No Assault.** Insulting actions or gestures without an assault upon the person will not reduce the homicide to manslaughter. Where upon a provocation unknown to defendant, his companion struck deceased and a fight ensued between them, and while defendant was looking on but taking no part in the fight deceased came near him and struck at him but failed to hit him, and thereupon defendant stabbed and killed deceased, there was no manslaughter in the case, and no instruction on the subject should have been given.

7. **INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE.** Where not a single element in the case depends for its proof upon circumstantial evidence no instruction on that subject should be given.

8. **ACCESSORIES: Before the Fact.** Where the fight which culminated in death came up suddenly, no words passed between defendant and his companion until deceased was stabbed and fell, and when deceased asked a negro woman who was talking with defendant's companion if there was "anything doing" the companion struck deceased and a fight between them began, and defendant without saying or hearing a word stood by with his knife in hand till a favorable opportunity presented itself and then stabbed and killed deceased, no instruction as to accessories before the fact should be given.

Appeal from Cooper Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED.

*L. O. Schaumburg* for appellant.

(1) The court failed to instruct the jury as to all the law arising in the case, contrary to Sec. 5231, R. S. 1909. Whatever grades of crime the defendant's testimony tended to prove, should have been covered by, appropriate instructions based upon his testimony, and the failure of the court so to instruct the jury constitutes reversible error. State v. Richardson, 194 Mo. 315; State v. Heath, 221 Mo. 565; State v. Sebastian, 215 Mo. 58; State v. Banks, 73 Mo. 592. (2) Defendant testified that the deceased first struck at him, whereupon he jumped back, pulled his hands out of his pockets and struck at deceased with a knife, and that when he struck at deceased, he did not intend to kill him. The jury were not instructed as to manslaughter in either degree. Defendant was clearly entitled under his testimony to have the jury instructed for a lower grade of homicide than either of the degrees of murder. State v. Palmer, 88 Mo. 572; State v. Branstetter, 65 Mo. 149; State v. Banks, 73 Mo. 592; State v. Partlow, 90 Mo. 626. (3) Defendant was convicted on circumstantial evidence alone, and the court, therefore, should have properly instructed the jury in reference to this character of evidence. No such instruction was given. State v. Moxley, 102 Mo. 388. (4) Testimony was introduced to prove verbal admissions charged to have been made by defendant. A cautionary instruction as to verbal admissions should have been given by the court. State v. Moxley, 102 Mo. 390. (5) The testimony in this case is insufficient on which to base a flight instruction. The lone fact that defendant went to another point within the State several days after the homicide was committed and before he was charged with the crime for which he was tried, is not sufficient basis for an instruction to the effect that defendant fled the country, and tried to avoid arrest and trial. State v. Evans, 138 Mo. 127. (6) It was the absolute right of the defendant to have the jury determine who in fact stabbed and killed the deceased, and the court invaded that right in assuming in the instruction that defendant stabbed and killed Philip Carpenter, as charged in the information. The defend-

ant positively denied that he stabbed the deceased. The determination of this controverted fact, by the jury, was of the utmost importance to defendant, for, if it believed defendant's testimony touching this point, he could be convicted of no crime under the information in this case. State v. Vaughan, 141 Mo. 521; State v. Lee, 182 S. W. 974. (7) Defendant sought to explain his departure from the community in which the homicide was committed, and his testimony tended to show that his purpose for going away was not to avoid arrest and trial, but that he and four others arranged previous to March 31, 1917, to go to Kansas City, Mo. Instruction H. disregarded defendant's testimony touching this point, and is not broad enough to include defendant's explanation. State v. King, 78 Mo. 558; State v. Harris, 232 Mo. 324; State v. Fairlamb, 121 Mo. 137; State v. Schmulbach, 243 Mo. 539; State v. Miller, 255 Mo. 231. (8) Under the evidence, the jury should have been required to find that defendant, if guilty of the crime, was the person who delivered the fatal blow. The record in this case discloses no evidence warranting the conviction of defendant on the ground that he was present, "aiding and abetting" in the perpetration of the alleged homicide. There being no evidence to support it, the court erred in giving the instruction. State v. Chambers, 87 Mo. 406. (9) The court erred in requiring defendant to testify as to a proceeding against him in a police court. The violation of a city ordinance is not a criminal offense and this court has uniformly held that a prosecution for the violation of a city ordinance is a civil proceeding. St. Louis v. Smith, 10 Mo. 439; Delaney v. Police Court, 167 Mo. 678; State v. Muir, 164 Mo. 610; St. Louis v. Tielkemeyer, 226 Mo. 140. Sec. 6383, R. S. 1909, therefore, does not authorize a defendant in a criminal case to be impeached by the introduction of evidence to the effect that he was convicted for the violation of a city ordinance.

*Frank W. McAllister*, Attorney-General, and *E. M. Connor*, Assistant Attorney-General, for the State.

272 Mo.—34

(1) A general assignment in a motion for new trial that the court erred in failing to instruct on all the law governing the case is insufficient. Appellant must point out specifically in his motion for new trial wherein the court failed to instruct. State v. Snyder, 263 Mo. 668; State v. Kretschman, 232 Mo. 29; State v. West, 202 Mo. 128; State v. Connors, 245 Mo. 477; State v. McGarver, 194 Mo. 742; State v. Delbitt, 191 Mo. 51; State v. Conway, 241 Mo. 291; State v. Dockery, 243 Mo. 599; State v. Sykes, 248 Mo. 712. (2) Under the evidence in this case, the defendant was not entitled to an instruction on manslaughter. State v. Miller, 263 Mo. 335; State v. Alcorn, 137 Mo. 121; State v. Johnson, 129 Mo. 26; State v. Melton, 102 Mo. 683; State v. Smith, 114 Mo. 406; State v. Musick, 101 Mo. 260; State v. Jones, 86 Mo. 623; State v. Sykes, 248 Mo. 708. (3) The appellant's defense being self-defense, it was not error not to instruct the jury on circumstantial evidence. State v. Gartrell, 171 Mo. 489; State v. Donnelly, 130 Mo. 642; State v. Fairlamb, 121 Mo. 137; State v. Robinson, 117 Mo. 649. (4) The evidence was sufficient to give an instruction on flight. State v. Lewkowitz, 265 Mo. 628; State v. Brooks, 92 Mo. 556; State v. Smith, 114 Mo. 416; State v. Griffin, 87 Mo. 608; State v. Walker, 98 Mo. 95; State v. Asa Sparks, 195 S. W. 1031. (5) The evidence in this case fully supports the giving of the instruction as to accessories before the fact. State v. Crabb, 121 Mo. 554; State v. Walker, 98 Mo. 95; State v. Nelson, 98 Mo. 414; State v. Miller, 100 Mo. 606; Kelly's Criminal Law and Procedure (3 Ed.), sec. 47. (6) Prosecutions by a city are not criminal cases. They are civil in form only and of a quasi-criminal character. State v. Gordon, 60 Mo. 383; In re Miller, 44 Mo. App. 127; Kansas City v. Clark, 68 Mo. 588; Carrollton v. Rohmberg, 78 Mo. 547; St. Louis v. Shoenbusch, 95 Mo. 621. The municipality is the agent of the city and a prosecution by the city is a bar to a prosecution by the State for the same offense in the State courts. Lynch v. Commonwealth, 35 S. W. (Ky.) 264; 1 Dillon's Municipal Corporations (4 Ed.), secs. 367-368; State v. Si-

monds, 3 Mo. 413; State v. Cowan, 29 Mo. 330; State v. Thornton, 37 Mo. 360; State v. Gordon, 60 Mo. 383. The courts of this State have always held that a conviction in a municipal court is a bar to the subsequent prosecution by the State for the same offense. State v. Simonds, 3 Mo. 414; State v. Cowan, 29 Mo. 330; State v. Hannah Thornton, 37 Mo. 361; Pilot Grove v. McCormick, 56 Mo. App. 530; State v. Freeman, 56 Mo. App. 579.

FARIS, J.—Defendant, tried in the circuit court of Cooper County, for murder in the first degree, for that, as it was charged in the indictment, he stabbed and killed one Philip Carpenter, was found guilty and his punishment assessed at death. From this conviction and the sentence bottomed thereon, he has, after the conventional motions, appealed.

The facts of this homicide as the record discloses them run about thus: On the night of March 31, 1917, Philip Carpenter (hereinafter for brevity called deceased), and one Louis Orr, both of whom were printers, were together in the town of Boonville. After having taken a number of drinks of liquor, until deceased was somewhat under the influence thereof, and until Orr, as he himself admits, was very drunk, they started about 11:30 o'clock at night down a certain alley in the town of Boonville, along which, it seems some considerable portion of the negro population of Boonville resides. After they had proceeded some little distance Orr stopped, but Carpenter kept going until he had reached a point somewhere near the center of the alley. Walking in front of deceased as he traversed this alley was one Stella Goosberry, a negress, who, it seems, lived with her husband in a house situate somewhere in the vicinity. This negro woman, who, as stated, was in front of deceased some little distance, and considerably in front of Orr, who had stopped, met about the center of the alley two negro men, one Ed. Porter, and defendant. This negress seems to have known both Porter and defendant; the former intimately, and the latter only casually. Upon meeting Porter and defendant, she complained to Porter that

some men were following her, and asked him to stand at the point where she had met him, until she reached her home. Almost immediately after this, and while the three negroes were still near each other, deceased came up, and walking between Porter and the negro woman, said to the latter "is there anything doing?" Thereupon Porter struck, or struck at, deceased (it does not clearly appear which); the two engaged in a fight, and the negro woman ran. This woman was a witness in the case and the facts so far related turn almost wholly upon her testimony.

Shortly after this, Orr, who had accompanied deceased into the alley, came running out and stated to a man whom he met, that deceased was in trouble down the alley. The alarm spread and certain persons went down the alley, and found deceased lying therein, stabbed and fatally wounded. A knife had been driven into the back of his neck, at the point of juncture of the head with the spinal column, almost severing his head from his body. From this wound he died some twelve hours later.

For some days defendant was not suspected of this murder, but Orr, who had been the companion of deceased during the evening on which deceased was killed, was arrested and held in custody for some three or four days. Subsequently the defendant, who had left Boonville, and gone to Kansas City, was arrested and charged with this murder. Upon being arrested he confessed to the marshal and to the sheriff, that he had stabbed the deceased, and attempted to tell them fully and in detail how the murder was committed. He told these officers of his going through the alley with Porter; of the meeting of the negro woman by Porter and him, and of part of the conversation which the woman had with Porter. But he did not hear the remark made by deceased to the negro woman. He told of the fight between Porter and deceased, and touching his own connection therewith said that he stood by without taking any part for some time, but that he had his knife partly open in his pocket with his hand on it; that deceased in the course of the fight between him and Porter, came close to defendant and struck

at him, and that thereupon he struck with his knife and stabbed deceased in the neck.

Defendant upon the trial testified as a witness in his own behalf. He there denied stabbing deceased at all, but did testify that deceased struck at him either with his hand or some weapon, it was too dark, he swore, for him to distinguish which, and that thereupon he struck at deceased with his hand, in which he held a knife; but that he did not touch deceased, and beyond striking at deceased when the latter struck at him, he took no part whatever in the fight between Porter and deceased. He denied having left Cooper County for the purpose of avoiding arrest and trial for the stabbing of deceased. He explained his presence in Kansas City by the statement that he and three others of his color and acquaintance had before the killing already agreed to go to Kansas City as soon as they were paid off, and that he went as soon as he got his money. Whether the other three went to Kansas City the record does not disclose.

At the close of defendant's cross-examination he was asked by counsel for the State, if he had ever been convicted of any crime, and he denied that he had been. Thereupon he was specifically asked by counsel for the State if he had not been convicted of vagrancy in the police court of the town of Boonville. He denied that he had ever been so convicted; whereupon, in rebuttal, the State offered the police judge, who testified that the records kept by the witness's predecessor showed that defendant had been convicted of vagrancy in the police court of the town of Boonville, on the 10th day of February, 1913.

The trial resulted, as stated, in finding defendant guilty of murder in the first degree, and in a sentence to death as punishment therefor.

Such other facts as may be necessary to an understanding of the points we find ourselves compelled to discuss, will be found in our opinion.

Defendant urges upon our attention numerous alleged errors. Many of these we find ourselves unable to review for lack of proper preservation of them for

review. Some of the points urged, but not properly saved, we find ourselves compelled to review, because they may arise upon the next trial, since, for errors appearing of record, we find it necessary to reverse and remand the case.

Among other matters urged, defendant complains that the learned trial court erred (1) in instructing the jury upon the presumption arising from flight, for that, (a) the facts shown by the record do not warrant any instruction upon the subject, and (b) the instruction given was bad; (2) in allowing defendant to be questioned, in an effort to impeach him about his conviction in the police court of vagrancy, and in offering testimony of such conviction, when defendant denied the fact; (3) in failing to instruct the jury (a) on manslaughter, and (b) on circumstantial evidence, and (4) in instructing the jury on accessories before the fact. These in their order.

I. The instruction given by the court on flight, read thus:

"The court instructs the jury that flight raises the presumption of guilt, and if you believe from the evidence that the defendant, after having stabbed **Flight.** and killed Philip Carpenter, as charged in the information, fled the country, and tried to avoid arrest and trial, you may take that fact into consideration in determining his guilt or innocence."

It is clear that this instruction by its terms assumes defendant's guilt and begs the question upon the most vital issue in the case. It was the province of the jury to find and say whether the defendant "stabbed and killed Philip Carpenter," and not the province of the court to assume this fact as true. If the stabbing had been admitted by defendant and his defense had been self-defense, no harm would have flowed from this assumption. But here defendant unequivocally denied that he stabbed deceased, and while the great weight of the testimony, and even his own extra-judicial confessions, unerringly point to the falsity of his denial,

yet we have uniformly held that the instructions must take their color from the evidence, and that it is error to disregard the defendant's testimony (State v. Weinhardt, 253 Mo. 629) unless the physical facts contradict such testimony beyond dispute or cavil. If, however, .in the instant case the jury had seen fit to believe the testimony of the defendant, he was guilty of no crime and must have been acquitted. It was defendant's right to have the jury pass upon this vital issue as to who stabbed the deceased, and the court could not invade that right and assume that defendant did it. [State v. Vaughan, 141 Mo. 514; State v. Lee, *ante,* p. 121, 182 S. W. 972.]

Upon the contention that no instruction whatever upon the subject of flight was warranted by the facts, we are not able to agree with learned counsel. These facts were that on the Wednesday which followed the stabbing of deceased on Saturday night preceding, defendant left Cooper County and went to Kansas City, where he was shortly after arrested at a place and under environments which might well argue an attempt at concealment. We think that the jury had the right to consider whether defendant's admitted going away from the scene and county of the alleged homicide, was or was not for the purpose of avoiding arrest and trial for this crime. But we are likewise thoroughly convinced that the instruction (or a separate one) which leaves to the jury to find the intent with which defendant left Cooper County and went to Kansas City, ought also aptly to embody the explanation which defendant gave upon the witness stand of his alleged flight, or reason for his presence in Kansas City. [State v. Potter, 108 Mo. 424; State v. Fairlamb, 121 Mo. 137; State v. Harris, 232 Mo. 317; State v. Walker, 98 Mo. 95; State v. Sparks, 195 S. W. 1031.]

We are constrained to conclude that in the two behalves mentioned the instruction on flight as given was bad, and that the giving thereof, in the form set out, constitutes reversible error.

II.    We are likewise of the opinion that the learned trial court erred in allowing defendant to be asked, in an effort to impeach him as a witness, whether he had not been convicted of vagrancy in the police court of the town of Boonville.   It is true that defendant denied that he had ever been so convicted.  If the matter had ended there, no harm with certainty could be said to have accrued to defendant.  But upon denying the fact of conviction, the police judge was sworn and was allowed to contradict defendant by orally testifying that the police court records made by one of his predecessors showed defendant's conviction of vagrancy in February, 1913. We think this was error.  Passing the question of the incompetency of the oral testimony of the police judge to prove what was shown by a record made by his predecessor (State v. Woodward, 191 Mo. 617), the testimony was rendered more hurtful by the fact that defendant was impeached by a showing that he had upon this matter of his conviction sworn falsely, as well as by the fact itself of a conviction for a thing which must have presented itself to the triers of fact as a criminal offense.

Conviction in Police Court.

We are of the opinion that a conviction in a police court of a violation of the ordinances of a town or a city is not such a conviction as falls within the purview of section 6383, Revised Statutes 1909.   Indeed, it was long doubted whether a conviction for a misdemeanor before a justice of the peace, or in a circuit court, was within the statute.   This latter doubt was set at rest in the case of the State v. Blitz, 171 Mo. 530, where it was held that a conviction of a misdemeanor is a conviction "of a criminal offense" within our statute, which reads:  "Any person who has been convicted of *a criminal offense* is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either *by the record* or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be con-

Criminal Offense.

cluded by his answer." [Sec. 6383, R. S. 1909.] (Italics are ours.)

We are of the opinion that neither by our decisions, nor by statute, is a conviction for vagrancy in a city court "a criminal offense" within the purview of the above quoted statute. For while the procedure, or some of it, in a prosecution for the violation of a town or city ordinance is criminal in form, that is, it follows the forms of the criminal procedure, we have nevertheless uniformly held that it is but a civil action to recover a debt or penalty due the city for the infraction of its ordinances. [St. Louis v. Tielkemeyer, 226 Mo. l. c. 141; State v. Muir, 164 Mo. 610.]

In the Tielkemeyer case, supra, it was said by VALLIANT, J.:

"In City of Kansas v. Clark, 68 Mo. 588, it was held that a prosecution under a city ordinance for keeping a gambling table contrary to the ordinance was not a prosecution for a crime, but a civil suit to recover a penalty, the court saying: 'Nor do we regard the violation of the ordinance under consideration as a crime, since "a crime . . . is an act committed in violation of a public law" (4 Black., Com., 5); a law coextensive with the boundaries of the State which enacts it. Such a definition is obviously inapplicable to a mere local law or ordinance, passed in pursuance of, and in subordination to, the general or public law, for the promotion and preservation of peace and good order in a particular locality, and enforced by the collection of a pecuniary penalty.' That language was quoted and followed as the correct rule of law in State v. Muir, 164 Mo. 610, in which it was held that a conviction under a city ordinance against gaming was not a bar to a subsequent prosecution for the same act under the State statute; in that case the court said that the prosecution under the city ordinance was a civil action, and quoted Cooley's Const. Lim. (6 Ed.), p. 239, to sustain the doctrine. In Canton v. McDaniel, 188 Mo. 207, l. c. 228, the converse of the proposition was also held, that is, that an acquittal in a prosecution under the State statute

was not a bar to a prosecution to recover the penalty prescribed in a city ordinance for the same act. In City of St. Louis v. DeLassus, 205 Mo. 578, it was again said that a prosecution under a city ordinance to recover a penalty was a civil action, and that an ordinance was not invalid because it forbade and imposed a penalty for an act which the State statute declared to be a crime and for which it prescribed a penalty, and also that the ordinance was not invalid because it imposed a higher pecuniary penalty for the offense than that imposed by the statute.''

But, while they would appear to be sufficient, we are not called on wholly to rely upon the adjudged cases, to prove that a violation of a city ordinance is not a criminal offense. Our statute has by self-contained delimitations defined for us the meaning of this term. Section 4926, Revised Statutes 1909, quite obviously confines ''criminal offense'' to either a misdemeanor or a felony, as witness this language:

''The terms 'crime,' 'offense,' and 'criminal offense,' when used in this or any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine, or both, may by law be inflicted.''

This we think settles the question without the necessity of considering the evil which might well flow from our writing into the law that a citizen convicted of failing to shovel the snow from an abutting sidewalk, or of failing *to park an automobile at the prescribed angle,* could have such facts shown years afterward to impeach his veracity in a trial for murder, or rape, or treason.

III. Touching the complaint of defendant that the court erred in failing to instruct on manslaughter, it would be sufficient for the uses of our present discussion to say that the motion for a new trial does not with that specificness of assignment which we require, mention this alleged error. [State

Instruction on Manslaughter.

v. Snyder, 263 Mo. 664.] This would suffice here, but since upon a new trial, which for the errors noted above we must order herein, the point may again arise, we would as well say that in our view there is no manslaughter in this case. It is at the best which may be said of it murder in the second degree.

We have had occasion in numerous cases to define manslaughter in the fourth degree, and to set out the necessary facts which must appear in a case before an instruction for this grade of homicide is warranted. [State v. Gordon, 191 Mo. l. c. 125; State v. Myers, 221 Mo. l. c. 620; State v. Heath, 221 Mo. l. c. 586.] In the case of State v. Myers, supra, this court said:

"In State v. Gordon, 191 Mo. l. c. 125, the rule as applicable to this subject was thus announced: 'At common law, words of reproach, howsoever grievous, were not provocation sufficient to free the party killing from the guilt of murder, nor were contemptuous or insulting actions or gestures without an assault upon the person, nor was any trespassing against lands or goods to have the effect to reduce the guilt of killing to a grade of manslaughter; the provocation must consist of personal violence. [East's Pleas of the Crown, 233; 4 Blackstone, Com., 201; State v. Wieners, 66 Mo. 13.] And the common law rule in this respect is firmly established in this State by a long line of decisions."

Measured by this rule, there is no ground for an instruction on manslaughter in the fourth degree. It is manifestly alone upon the testimony of defendant, on which, if at all, we must find a basis for such an instruction. According to defendant, he and his companion Porter met deceased, whom defendant did not know, and against whom he harbored no disclosed enmity. Suddenly upon a provocation unknown to defendant, Porter struck deceased and a fight ensued between deceased and Porter. While defendant was looking on, but taking no part in this fight, deceased came around near him in the course of the melee and struck at defendant but failed to hit him. Thereupon defendant stabbed and killed deceased. So we hold that there was

no manslaughter of any degree in this case upon the proof as the instant record shows it.

IV.   Much of what we say above also applied to the complaint of defendant that there should have been given an instruction on circumstantial evidence.   This point is not properly saved for review.   But lest it again arise we would as well dispose of it by saying that no instruction on circumstantial evidence was called for in this case.   Not a single element in the case depended for its proof on circumstantial evidence.   A man is found dying in an alley with his head almost severed from his body.   A witness in the case sees a fight arise in the presence of defendant between the companion of defendant and the dead man.   Defendant when arrested confesses that while his companion and deceased were fighting he stabbed deceased in the neck from behind.   The facts refute the contention.   The authorities are all one way in holding that in such a case it is not incumbent upon the trial court to instruct on circumstantial evidence.   [State v. Bobbitt, 215 Mo. 10;  State v. Crone, 209 Mo. 316;  State v. Donnelly, 130 Mo. 642;  State v. Robinson, 117 Mo. 1. c. 663.]

*Circumstantial Evidence.*

V.   Since this case must be retried, should the testimony which is pertinent be no stronger than it is upon the instant record, we think the instruction as to accessories before the fact should be omitted.   The evidence discloses that the fight which culminated in the killing of deceased came up suddenly.   No words passed between Porter and defendant till the deceased was stabbed and fell, so far as the record shows.   When deceased asked the negro woman if there was anything doing Porter struck him and the fight began.   Defendant without saying a word and without hearing a word, stood by with his knife in his hand, till a favorable opportunity presented itself, and he then stabbed and killed deceased.   Therefore while the distinctions be-

*Accessories.*

tween principals and accessories before the fact have been so far obliterated in this State as to render a discussion of the subject largely academic, we see no warrant for the giving of this instruction under the facts here. Defendant either stabbed and killed deceased, or he was merely an innocent bystander, and should be tried as a principal.

Other matters are urged upon our attention, but all such fall into that large category of things and matters which will not necessarily happen again.

For the errors pointed out let the case be reversed and remanded for a new trial not inconsistent with what we have said herein. All concur.