# THE STATE v. THORNHILL et al., Appellants.

### Division Two, May 19, 1903.

1. **Alibi:** INSTRUCTION AS TO TWO DEFENDANTS. Where there was no attempt to establish an alibi for one of two jointly-tried defendants, an instruction telling the jury that if they believed "the defendants were elsewhere than at the place of the alleged crime," they should find "the defendants not guilty," is not error, as making it necessary for the jury to believe both were absent before either could be acquitted. On the contrary, it was too favorable to them.

2. ————: WHEN NOT TO BE GIVEN. Where the evidence of both the State and defense establishes the fact that both defendants were present on the car at the time a passenger was robbed, there is no room for any instruction on alibi. The fact that one of them has endeavored to show that he did not board the train at a place as a passenger testified and travel with him from there to the town where the robbery was committed, but was all day in that town, does not authorize an instruction on alibi, when all the evidence shows both were present at the time and place when and where the crime was committed.

3. **Impeaching Testimony:** GAMBLERS. Where defendants on trial for grand larceny offer in evidence that their general reputation in the neighborhood in which they live is good for honesty and integrity, it is proper on cross-examination of the witnesses for the prosecuting attorney to inquire if they do not know that defendants are generally reputed to be gamblers, and on rebuttal to show that one of them has been convicted of gambling.

4. ————: ————: CONVICTED OF MISDEMEANOR. Under the present statute the fact that a defendant who offers himself as a witness has been convicted of a misdemeanor (in this case, of gambling) may be offered for purposes of impeachment.

5. **Punishment:** JOINT VERDICT: LOWEST SENTENCE. Where the jury found both defendants guilty of grand larceny and assessed "their punishment at two years in the penitentiary" in one verdict, and not separately, as the law requires, and the trial court sentenced each of them separately to the penitentiary for two years—the lowest punishment that can be assessed against one found guilty of the crime—the Supreme Court will not do the vain and useless thing of sending the case back in order that the record may show that the court itself declared and assessed the punishment.

State v. Thornhill.

Appeal from Barry Circuit Court.—*Hon. Henry C. Pepper,* Judge.

AFFIRMED.

*George & Landis, D. H. Kemp* and *Wear & McGregor* for appellants.

(1) The jury were in effect told that if they did not believe the testimony offered to establish an alibi as to one of the defendants they might disregard the testimony offered in support of the alibi as to the other. The court did not direct the jury as to what they should do in the event they believed the testimony offered relative to the alibi of one of the defendants and disbelieved that offered for the other. State v. Kaiser, 124 Mo. 666; State v. Rambo, 95 Mo. 462. (2) The court should have sustained the motion for a new trial on account of having admitted evidence showing that John Such, one of the defendants, had been convicted of gambling. State v. Parker, 96 Mo. 382. And the error was not cured by the instruction of the court withdrawing that testimony from their consideration. State v. Daubert, 42 Mo. 243; State v. Moberly, 121 Mo. 604. (3) The motion in arrest of judgment should have been sustained. The court did not direct nor did the jury return a verdict assessing separately the punishment of the defendants. R. S. 1899, sec. 2647; State v. Kaiser, 124 Mo. 664; State v. Berry, 21 Mo. 504; State v. Gay, 13 Mo. 441; Flynn v. State, 8 Tex. App. 398.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) We have examined this record with considerable care and fail to find anything therein tending to show that defendant Such offered any testimony

tending, in the slightest degree, to show an alibi. If we are correct and no such testimony was offered by Such, then he certainly can not complain because of the instruction given touching that defense. The most that could be said of such an instruction, as to him, is that it assumed that he had offered such testimony and certainly could do him no harm. "No jury of ordinary intelligence would need to be told that they should not convict both defendants if only one was present, nor one if both were present." State v. Taylor, 134 Mo. 151. (2) But conceding, for the purposes of this brief, that the record shows that Such offered such testimony, he is not, under the statement of this record, in a condition to raise that point. The defendants excepted to the instructions that were given by the court; but did not pray the court to instruct on all the law in the case, and did not save any exception to its failure to do so. State v. Cantlin, 118 Mo. 100; State v. Albright, 144 Mo. 642. (3) The defendant Such offered a number of witnesses to prove his good reputation for honesty and integrity. On cross-examination these witnesses were asked if they did not know that his general reputation was that of being a gambler. These questions were objected to and objections were overruled. This line of examination was proper. The defendant had voluntarily put his character in issue and it was competent for the State to meet the issue thus presented. The defendant was presumed to be prepared to defend his reputation and the State has the right to apply the usual tests to determine the credibility and information of the witnesses called to support it. The question was relevant to show the grounds upon which the witness made his estimate of character. State v. Crow, 107 Mo. 341; State v. McLaughlin, 149 Mo. 32.

GANTT, P. J.—The defendants, John Thornhill and John Such, Jr., were prosecuted at the September

term, 1902, of the Barry Circuit Court, on information filed by the prosecuting attorney for grand larceny, and convicted. From the sentence imposed they have appealed to this court. The evidence on behalf of the State tended to prove that on the second day of April, 1902, William Z. Burton, an old man, seventy-one years of age, a farmer living in Miller county, Missouri, took passage on a train of the St. Louis & San Francisco railroad, at Crocker, Missouri, for South McAlester, in the Indian Territory. He had forty dollars in his pocketbook on his person.

After the train had passed Springfield and was near a station on said road, known as Republic, the defendant, Thornhill, came in, spoke to the prosecuting witness and sat down by him. The two men began to converse. On learning that the prosecuting witness was going to South McAlester, Thornhill, who told the prosecuting witness that his name was Morgan, and that he was a brother to "Reverend John Morgan," also stated that he was going to South McAlester. The prosecuting witness had a widowed sister who lived at South McAlester, and the defendant pretended to be acquainted with her. The defendant advised Burton that they would have to change cars at Monett, and that he would assist him in making the change there. They reached Monett, separated, and the prosecuting witness went to the depot, where he remained until his train was announced. When he got back on the train, and in the rear end of the coach, he sat down, and had only been there a moment when defendant Thornhill tapped him on the shoulder, and said, "I will introduce you to the conductor," and they walked to the front end of the car. There he introduced him to defendant Such, representing Such's name to be Turner. Thornhill pulled out a twenty-dollar bill and told his co-defendant that he and the prosecuting witness wished a ticket for South McAlester. Such promptly and sternly re-

marked that he did not have the change. Thereupon, Thornhill asked the prosecuting witness if he could not change the bill, and the prosecuting witness pulled out his pocket book and opened it. It seems that the pocket book was snatched from his hand by Such, who immediately ran away. The old man immediately began to bemoan his fate, and the defendant, Thornhill, attempted to silence him by saying that he ought not be so quick to charge robbery; that the train had not yet started and that Such would return with his money. But the train did start within a moment and Such did not return; and defendant Thornhill also left the car.

The State introduced a number of witnesses who saw and identified the three men and who heard the exclamation of the old man, and Thornhill attempting to pacify him.

On their part, the defendants offered evidence tending to show that two other men, whom the testimony characterized "as confidence men," were the ones who committed the larceny. Thornhill also offered evidence tending to show that he did not board the train at Republic, and that he was in Monett during all the day. They both denied any connection with the crime; but the jury did not credit their statements and found them guilty.

Three grounds for reversal are urged by defendants.

I. Among other instructions given by the court is the following:

"3. The court instructs the jury that one of the defenses in this case is what is known as an alibi, that is, that they were not present at the time and place where it is alleged the crime was committed. Therefore, the jury are instructed if they believe from the evidence that the defendants were elsewhere than at the place of the alleged larceny at the time the same was said to have been committed, then the jury should find the defendants not guilty, and if upon a full considera-

tion of all the evidence in the case the jury have a reasonable doubt as to whether the defendants were present at the time and place of the alleged crime, they should acquit them.''

The objection made is, that the testimony to establish an alibi for each of the defendants is different, and the jury could have well believed the evidence tending to establish an alibi for one of the defendants and rejected it as to the other, but this instruction gave the jury no opportunity to separate the defendants and did not permit them to acquit one and convict the other; that in effect it told them that if they discredited it as to one, they might reject it as to both.

An examination of the record discloses that no effort was made by defendant Such to prove an alibi. In fact he testified he was present in the car at Monett the night Mr. Burton was robbed. The State's evidence all tended to show that Burton's money was stolen at Monett in a Frisco coach on the night of April 2d. The only alibi offered in evidence was on the part of Thornhill as to his presence on the train from the station Republic down to Monett. He insisted he was in Monett all that day and was not on the train with the old gentleman. He admits he was on the train, at Monett, on which the old gentleman's money was stolen.

His alibi was to contradict Mr. Burton's evidence to the effect that Thornhill rode with him from Republic to Monett, and talked with him, and gave his name as Morgan. Thornhill's own evidence places him in the car at or near the time when the larceny was committed.

There was no evidence of an alibi at the time the theft was perpetrated, as to either Thornhill or Such.

The most that can be said of this instruction is that it was too favorable to both of them, and it is evident it could not have injured them or either of

Vol 174 mo—24.

them.   We think no instruction on alibi should have been given, as the essential element in this defense is that the defendant was not present at the time and place of the commission of the crime.

When not only the testimony in behalf of the State, but that of the defendants as well, established that the defendants were present on the car at the time the offense is alleged to have been committed, there is no place in the instructions for the law as to alibi.

II.   The defendants each offered evidence that their general reputation in the neighborhood in which they resided was good for honesty and integrity.   On cross-examination the prosecuting attorney inquired if the witnesses did not know they were generally reputed to be gamblers.

Defendants objected to this line of cross-examination, but we think it was entirely permissible.   The defendants had tendered their character for honesty and integrity as an issue, and certainly proof that they were reputed to be gamblers would go far to establish that their reputations for honesty and integrity were bad.   [State v. McLaughlin, 149 Mo. 19.]

In rebuttal the State offered evidence that defendant Such had been convicted of gambling.   The circuit court of its own motion struck out this evidence and directed the jury, both orally and in writing, to disregard it.   Gambling under the laws of this State is a misdemeanor.   [Sec. 2195, R. S. 1899.]   By section 4680, Revised Statutes 1899, the conviction of any person of a *criminal offense* may be proved to affect his credibility.   The defendant Such had offered himself and testified as a witness.   Under the foregoing section it was competent to prove his conviction of a misdemeanor which our statute defines to be "a criminal offense."   [State v. Blitz, 171 Mo. 530.]

III.   The last contention is that the judgment must be reversed because the jury failed in their verdict to assess the punishment of each defendant sep-

arately as required by section 2647, Revised Statutes 1899. The jury found both defendants guilty and assessed "their punishment at two years in the penitentiary."

This assignment has been considered by this court on different occasions. In the early cases of State v. Gay, 10 Mo. 441, Barada v. State, 13 Mo. 94, and State v. Berry, 21 Mo. 504, the verdict assessed fines in each case. In State v. Gay, and in State v. Berry, the fine exceeded the minimum prescribed by the statute, and this court reversed the judgments for the reason that it would not be right or proper to collect the whole fine of one defendant in discharge of the entire judgment; nor proper to collect that amount from each one of the defendants separately, but in Barada v. State, the jury assessed the minimum fine against both, and this court held that "the error, if any, was clearly in their favor," and could not be said to be to their injury, and affirmed the judgment.

In the more recent case of State v. Gordon, 153 Mo. 576, the verdict was joint and assessed the punishment at five years in the penitentiary. Judge SHERWOOD, after noting this error, said: "The court, therefore, should either have refused to receive the verdict and suggested its being put in proper form or, failing in this, should itself have assessed and declared the punishment (R. S. 1889, sec. 4230; now sec. 2649, R. S. 1899), which the jury in this case by their defective verdict failed to do. For this cause alone the judgment must be reversed and the cause remanded with directions to the trial court to bring the defendant before it and having done so proceed to assess and declare his punishment and otherwise proceed in the cause as required by law."

This ruling then and now commends itself for the reason that as no error had occurred up to the point of assessing the punishment, no rule of right or policy demanded that the whole case should be retried

when the statute furnished its own corrective for such an irregularity.

At common law no such point as this could arise, because under that system the jury merely returned the verdict of guilty, and the duty of imposing the punishment as to each defendant devolved upon the courts in accordance with the law.

In State v. Gordon, 153 Mo. 576, it will be observed it was held that the verdict assessing the punishment of both together was in effect a failure to assess it and in such case section 2649 provides "the court shall assess and declare the punishment and render judgment accordingly."

What we directed the circuit court to do in Gordon's case, the record before us discloses the circuit court did. When the motions for new trial and in arrest were overruled the court sentenced each of these defendants separately to the penitentiary for two years, the minimum punishment prescribed by the statute for grand larceny. The law never requires a vain and useless thing to be done. By reciting the verdict of guilty and the assessment of the lowest punishment and then proceeding to sentence each separately, it must be held that the court in view of the statute above quoted assessed the punishment itself and rendered judgment accordingly. To send the case back for the court to go through the empty formality of again assessing the punishment would be to sacrifice substance and common sense to a barren technicality, which could in no way benefit the defendants or either of them.

The judgment therefore will be affirmed as to each defendant. All concur.