### THE STATE v. POLLY HOWE, Appellant.

Division Two, March 7, 1921.

1. **CONSTITUTIONAL QUESTION: Preserved for Review.** If the constitutional question was raised only by a motion to quash the information, and the bill of exceptions fails to show that a motion to quash was filed or overruled, the question is not for consideration on appeal.

2. **PROSTITUTION: Receiving Money of Prostitutes: Act of 1913.** Section 3 of the Act of 1913, Laws 1913, page 220 (the Missouri "White Slave" Act) does not distinguish between the character of persons to whom it is intended to apply, but is broad enough to embrace all persons who knowingly accept money earned by a woman by acts of prostitution, without consideration, regardless of the manner in which it is received, whether they be procurers, or men engaged in illicit traffic with women, or a woman who keeps a baudy house and requires another woman therein to divide with her the proceeds of her earnings while engaged in prostitution.

3. ———: ———: **Earned by Illicit Sexual Intercourse.** An instruction telling the jury that if defendant did knowingly, unlawfully and feloniously accept, receive or appropriate to her own use any

State v. Howe.

amount of unlawful money made by the earnings of a certain woman, "by engaging in prostitution, that is, by having illicit sexual intercourse with men," etc., includes words not in the statute, and by the use of the word "illicit" might require the jury to find that the prostitution of the woman was criminal; but their inclusion is an error of which the defendant cannot complain, because these words placed upon the State a greater burden than the statute does, and requires the jury to find a fact which the statute does not make an element of the offense. The statute only requires the jury to find that the money received by defendant was earnings received by a woman engaged in prostitution; and if the money was so earned, and defendant knowingly received it, without other consideration, she is guilty under the statute, although the conduct of the prostitute may not have been violative of the criminal law.

4. ————: ————: Evidence: Physician's Receipt. A physician's receipt showing that defendant had paid a bill for the prosecutrix, offered for the purpose of accounting for the absorption by the defendant of the prosecutrix's money, is a mere statement of a third person not a party to the suit, without opportunity of cross-examination, and is therefore pure hearsay, and is properly excluded.

5. DEFENDANT AS WITNESS: Cross-Examination: Former Conviction. Under the statute (Sec. 6383, R. S. 1909), a defendant, who takes the witness stand in his own behalf, may be asked on cross-examination if he was ever convicted of felony or other crime.

6. EVIDENCE: Running off Witness. Testimony tending to show that defendant has attempted to procure false evidence, or to destroy evidence against himself, or to spirit away the prosecutrix so as to prevent her from testifying, is always admissible.

7. OPENING STATEMENT. It is not incompetent for the prosecuting attorney to mention any fact in his opening statement which he can prove and it is competent for him to prove. It was not improper for the prosecuting attorney in his opening statement to state that defendant had attempted to spirit away the prosecutrix, since it was proper to prove that fact and there was evidence tending to prove it.

Appeal from Randolph Circuit Court.—*Hon. A. W. Walker,* Judge.

AFFIRMED.

*Irwin & Haley* and *R. A. Higdon* for appellant.

(1)   The legislative act, Laws 1913, p. 219, under which defendant was tried, is unconstitutional in that the bill, as enacted, does not conform to the requirement of Section 28 of Article IV of the Constitution, in that said bill contains more than one subject, as is expressed in its title.   The title even embodies the subject of removal of disqualifications of witnesses.   While it is true that this title, as given in the caption, is not treated in the body of the bill, still this should enter into consideration of the point here made.   A bill to comply with the Constitution should deal with subject-matters having natural connection.   The provisions of this act must be germane to the subject.   State v. Coffee & Tea Co., 171 Mo. 634; State v. Bixman, 162 Mo. 1.   (2)   Even conceding the constitutionality of the law, it has no application to the facts as established by the evidence in this case.   The evidence tends to prove only that the defendant was guilty of a misdemeanor, to-wit, a bawdy-house keeper.   (3)   The instructions given by the court might be said to approximately cover the case under the theory taken by the trial court, that a bawdy-house keeper who, by furnishing house, room, board, etc., and who received in consideration there for a share of the money earned by inmates, comes within the purview of the act under which defendant was tried.   Appellant contends that such was not the intendment of the act, and that all the instructions given are error.   (4) The trial court voiced his interpretation of the act, and in Instruction 1, complained of, gave an unwarranted extension to the act itself, by refusing to use the words of the statute, "without consideration," and by substituting instead the words "without any consideration therefor independent of said witness engaging in illicit sexual intercourse as aforesaid."   (5) The court should have instructed the jury as to the meaning of the words "illicit sexual intercourse" used in Instruction 1, by defining the same, as the duty devolves upon the State to define the meaning

of technical words when used in informations and instructions. (6) The State was permitted to offer testimony tending to prove the crimes of false imprisonment, tampering with a witness, the removal and secretion of witnesses, and other crimes, with none of which defendant stood charged. The admission of this testimony is clearly in violation of the general rule and cannot be justified under any exception to the rule that the courts of this State have ever recognized. State v. Duff, 253 Mo. 415; State v. Hyde, 234 Mo. 200; State v. Hale, 156 Mo. 102; State v. Moberly, 121 Mo. 604; State v. Young, 119 Mo. 495; State v. Reed, 85 Mo. 194; State v. Martin, 74 Mo. 547; State v. Goetz, 34 Mo. 85. (7) The court permitted the defendant to be cross-examined concerning many matters about which she did not testify in chief, all over the objections of defendant. This cross-examination even embraced examination as to other alleged crimes than that charged in the information. The cross-examination of defendant concerning conversations with Niece Bond and transactions alleged as occurring in Kansas City, Missouri; concerning abduction of witnesses, and concerning alleged threats to kill prosecuting witness if she did not sign statements, none of which had been gone into in defendant's examination in chief, are all violative of well-defined rules of evidence and were highly prejudicial to defendant. Added to this error, three witnesses were permitted to testify to impeach defendant on answers compelled on cross-examination concerning matters not gone into in her examination in chief, all to the prejudice of defendant. State v. Grant, 144 Mo. 56; State v. Hathborn, 116 Mo. 229; State v. Brannum, 95 Mo. 19; State v. Fullerton, 90 Mo. 411; Sec. 5242, R. S. 1909. (8) The defendant produced a receipted bill for money paid by defendant for medical services rendered to the proscuting witness. The court not only rejects this evidence, but reprimands defendant's counsel for offering same. We submit, the charge being specifically for money had and received without lawful consideration, that the defendant in all

conscience should have been permitted to introduce a receipted bill for money paid in behalf of prosecuting witness.

*Frank W. McAllister*, Attorney-General, *Henry B. Hunt*, Assistant Attorney-General, and *A. L. Shortridge*, of counsel, for respondent.

(1) The filing and overruling of a motion to quash must appear in the record proper. As the purported constitutional question is set forth in a motion to quash, the filing and overruling of which motion is not noted in the record proper, no constitutional question is raised for review. 4 C. J. 59, sec. 1647; 2 Cyc. 1041; State v. Scobee, 255 Mo. 272; State v. George, 221 Mo. 521; State v. Tooker, 188 Mo. 444; State v. Glasscock, 232 Mo. 291; State v. Wooley, 215 Mo. 675; State v. Finley, 234 Mo. 604. (2) The Act of 1913 deals with but one subject, pandering, which is clearly and solely expressed in the title of said act. Laws 1913, p. 219; 1 Sutherland, Statutory Construction, p. 249; Ewing v. Hoblitzelle, 85 Mo. 71; State v. Doerring, 194 Mo. 408; People v. Fegelli, 163 App. Div. (N. Y.) 579. A bill is not defective because it does not deal with all matters expressed in the title. 36 Cyc. 1032; State ex rel. v. Bronson, 115 Mo. 276; State v. Burgdoerfer, 107 Mo. 28. (3) The act in question created the substantive offense of pandering. Section 3 of said act designates one of the prohibited forms of said offense, and the evidence tended to prove the offense as charged under said section. Laws 1913, p. 219; State v. Fink, 186 Mo. 56; People v. Fegelli, 163 App. Div. (N. Y.) 577; Currington v. State, 72 Tex. Cr. 148. (a) Said Act of 1913, Section 3, was not aimed solely at the "cadet" who subsists directly on a prostitute's earnings. The purpose of the act was to stop all forms of money making from earnings by prostitution. People v. Fegelli, 163 App. Div. (N. Y.) 578; Currington v. State, 72 Tex. Cr. 148. (b) Said act did not repeal, and does not conflict, with the statute prohibiting the setting

up and keeping of a bawdy house. Sec. 4754, R. S. 1909; 36 Cyc. 1095; 1 Sutherland, Statutory Construction, p. 463; State v. Brotzer, 245 Mo. 508. (4) The State introduced evidence tending to show that appellant, after her arrest, falsely imprisoned the prosecutrix, abducted and secreted her, forced her to make a false affidavit denying the offense, and persuaded her to agree to testify in appellant's behalf. This evidence was competent to show appellant's consciousness of guilt. 16 C. J. 555, sec. 1075; 12 Cyc. 398; Underhill, Crim. Ev. (2 Ed.) sec. 121; Kelly's Crim Law, sec. 289; State v. Alexander, 184 Mo. 274; State v. Alexander, 119 Mo. 461; State v. Matthews, 202 Mo. 148; Ryal v. State, 182 Pac. (Okla.) 257; State v. Keith, 47 Minn. 563; Conway v. State, 118 Ind. 490. (5) The Court properly permitted the State to cross-examine appellant with reference to her meeting with Niece Bond. State v. Sherman, 264 Mo. 381; State v. Ivy, 192 S. W. 736; Sec. 5242, R. S. 1909; 40 Cyc. 2714; State v. Avery, 113 Mo. 499; State v. West, 95 Mo. 143; State v. Baker, 262 Mo. 699.

MOZLEY, C.—On the 18th day of June, 1919, the defendant was convicted in the Circuit Court of Randolph County, and sentenced to a term of four years in the penitentiary, on the charge of receiving, without consideration, the sum of thirty dollars from Lillie Slingman, the money earned in prostitution, contrary to Section 3 of the Act of 1913, Laws 1913, p. 220. The information was filed in Pettis County, charging the commission of the offense in that county, and a change of venue was granted to Randolph County, where the case was tried. The defendant appealed.

The evidence shows that the defendant kept a house of prostitution in the City of Sedalia. Lillie Slingman became an inmate of that house some time in February, 1919, and remained there a week or more and then ran away, she testified. Her testimony, and that of two or three other inmates of the same house, was to the effect that she had an arrangement with the defendant whereby she was to pay three dollars for her board and give

to the defendant half the money which she made while there. She earned sixty-three dollars while at the place, the proceeds of prostitution. The defendant took all the money as soon as Lillie collected it, and after deducting her half charged Lillie the balance for clothes, etc. The evidence is entirely clear and sufficient to show the character of the house kept by defendant, and the agreement between Lillie Slingman and defendant and the manner in which the money was earned.

The information was filed April 5, 1919, and the trial began on the 17th day of June and ended by a verdict on the 18th of June. Evidence was introduced by the State to show attempts by the defendant, between the time of the arrest and the trial, to get Lillie Slingman out of the way. She was persuaded to get into an automobile one day, was taken to Clinton and sent to Springfield; was for a time in Kansas City, and in Quincy, Illinois. She was brought back to Sedalia by the sheriff at one time from Joplin, Missouri, and another time from Quincy, Illinois. She had been in jail in order to hold her as a witness, just prior to the time she testified.

At one time, while apparently under the influence of the defendant, in June, 1919, she made an affidavit in which she stated that all that she had previously said about receiving money from men and dividing with Polly Howe, and the kind of house Polly Howe kept, was untrue; that Polly Howe was kind to her, and that her business was dressmaking, and that the prosecuting attorney had threatened her with jail and the penitentiary if she did not state that Polly Howe had spirited her off. On being shown this affidavit while on the stand, the witness stated that she was taken to defendant's residence; that a lawyer was there who asked her to sign the affidavit; that the affidavit was not read to her but she signed it because she was afraid of the appellant, who had a gun on the table at the time.

Defendant testified that she received no money from Lillie except for her clothes and doctor's bills, and in-

troduced evidence tending to show that she was entirely innocent of the crime charged. Other facts in connection with the alleged offense will be mentioned in considering the points urged for reversal.

I. The demurrer to the evidence was properly overruled. The case was one for the jury.

II. It is claimed by appellant that the statute under which the appellant was prosecuted is unconstitutional. The constitutional question, it is asserted, was raised by motion to quash the information. The Constitutional Question. transcript of the record proper filed in this court nowhere shows the filing or overruling of any motion to quash. On the suggestion of a diminution of the record, a writ of *certiorari* was directed to the Clerk of the Circuit Court of Randolph County requiring him to certify the record in said cause. In response to the writ the clerk of the circuit court sent here his certificate showing that a bill of exceptions was filed, but presented no copy of any record showing that the motion to quash was ever filed or overruled. Therefore, the unconstitutional question is not before us for consideration. [State v. Wade, 263 Mo. 263; State v. Scobee, 255 Mo. l. c. 272; State v. George, 221 Mo. l. c. 521.]

III. It is further urged by the appellant that Section 3 of the Act of 1913 defining a felony cannot apply to the defendant in this case. It is contended that Section 4754, Revised Statutes 1909, which provides a penalty for keeping a brothel or bawdy house, describes the offense of which the defendant was guilty as a misdemeanor, and that the receiving of money earned by the inmates of the place was not the offense intended by the Legislature to apply to such person. The argument is that the act was intended to apply to procurers and cadets, and particularly to men engaged in the traffic with women. The Act of 1913 is the Missouri "white slave" act, and the language of Section 3 does not distinguish between the character of persons to whom it is intended to apply. It

is broad enough to embrace any person who knowingly accepts money earned by a woman in prostitution, without other consideration, regardless of the manner in which it is received. The fact that the defendant may have been guilty of another offense against which the statute is leveled would not prevent her being guilty of the offense under consideration.

IV. It is further contended that the court erred in giving instruction number one, as follows:

"1. The court instructs the jury that if you believe and find from the evidence that the defendant at the County of Pettis, in the State of Missouri, on the— day of February, 1919, or at any time within three years *Instruction.* next before the filing of the information herein, to-wit, the 7th day of April, 1919, did knowingly,. unlawfully and feloniously accept, receive or appropriate to her own use any amount of lawful money of the United States from earnings made by .the witness, Lillie Slingman, by engaging in prostitution, that is by having illicit sexual intercourse with men, and that said money was accepted, received or appropriated to her own use by defendant without any consideration therefor independent of said witness engaging in illicit sexual intercourse as aforesaid, then you should find the defendant guilty, and assess her punishment at imprisonment in the penitentiary for a term of not less than two nor more than twenty years.''

Section 3 of the Act under consideration is as follows:

"Sec. 3. *Earnings of prostitute—not to be accepted or received—felony—penalty.* That any person who shall knowingly accept, receive, levy or appropriate any money or other valuable thing, without consideration, from the proceeds of the earnings of any woman engaged in prostitution, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment for a period not less than two nor more than twenty years.''

The objection to the instruction is that the jury was required to find that the money was received "by having

illicit sexual intercourse with men." This clause is not in the statute nor is it in the information—the information following the language of the statute. It is argued that the immoral conduct of women kept in a house of the character described might be such that no statute makes it criminal, while this instruction directs the jury to find that the money was earned by "illicit" or criminal acts, that is, acts against which some statute is leveled.

That is error in the instruction, but the appellant is not injured by it; it is an error against the State. It requires a finding by the jury of a fact which the statute does not require to be found as an element of the offense. The instruction put an additional burden upon the State, which the law did not impose; that is not an error of which the defendant has any right to complain. [Turnbow v. Kansas City Rys. Co., 277 Mo. 644; Krinard v. Westerman, 279 Mo. 680; Bryant v. K. C. Rys. Co., 217 S. W. l. c. 634; Malone v. St. L. & S. F. Ry. Co., 213 S. W. l. c. 867; Shawhan v. Shawhan Dist. Co., 197 S. W. l. c. 374; Martin v. Coal Co., 174 Mo. App. l. c. 445-6; Moore v. McHaney, 191 Mo. App. l. c. 697.] The statute required a finding only that the money received by the defendant was earnings of the Slingman woman in prostitution. Although the conduct of Lillie Slingman while an inmate of the defendant's house may have been strictly within the law so far as the criminal statute is concerned, yet if the money was earned by the means described in the statute, and the defendant knowingly received it without other consideration, defendant was guilty.

V. While the defendant was on the stand counsel offered in evidence a receipt by a physician showing the defendant had paid a doctor bill for Lillie Slingman amounting to $25. This receipt was offered to account for the absorption by the defendant of Lillie's money. The evidence was excluded, and error assigned to the ruling. The evidence was pure hearsay; such a statement by a third person not a party to the suit, with no opportunity to cross-examine, comes within the rule relating to hearsay evidence. [Doherty

Receipt as Evidence.

v. Doherty, 155 Mo. App. 1. c. 487; Howell v. Sherwood, 242 Mo. 513.]

VI.   Defendant was asked on cross-examination if she had ever been arrested and convicted of crime.  She stated that she had, three times, and then mentioned the three offenses of which she had been **Defendant:** convicted.  It is urged that this cross-**Cross-Examination.** examination is error because the defendant was not examined as to those matters in chief.

Section 6383, Revised Statutes 1909, is as follows: ''Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination,'' etc.

This section repeatedly has been held by this court to apply to a defendant who takes the stand in his own behalf.  [State v. Larkin and Harris, 250 Mo. 1. c. 240-241; State v. Spivey, 191 Mo. 1. c. 110-111; State v. Woodward, 191 Mo. 617, 1. c. 633; State v. Thornhill, 174 Mo. 364; State v. Banks, 258 Mo. 479; State v. Corrigan, 262 Mo. 195; State v. Mills, 272 Mo. 526; State v. Barrington, 198 Mo. 23; State v. Barnett, 203 Mo. 1. c. 657; State v. Johnson, 192 S. W. 441.]

In the case of State v. Larkin and Harris, supra, this court pointed out the apparent conflict between Section 6383 and Section 5242 which prohibits the cross-examination of a defendant, while a witness, upon matters not referred to in his examination in chief; but holds the rule to be well settled in this State that a defendant, in any case, while on the stand, may be asked on cross-examination if he was ever convicted of a felony or any other crime.   Section 5242 provides that a defendant in such case ''may be impeached as any other witness.''

VII.   Error is assigned to the action of the trial court in permitting the State to show over the objection **Spiriting** tempted to spirit Lillie Slingman away so **Away Witness.** as to prevent her testifying.  Evidence is always admissible for the purpose of showing that the

accused has attempted to procure false evidence or destroy evidence against himself. [State v. Mathews, 202 Mo. l. c. 149; State v. Alexander, 119 Mo. l. c. 461; State v. Alexander, 184 Mo. l. c. 274.] The ruling was correct.

VIII. It is claimed that the prosecuting attorney in his opening argument was allowed by the court to make statements which were prejudicial and improper. The only matter complained of in the prosecutor's opening statement was a reference to the attempt of the defendant to spirit the witness Lillie Slingman away. The objection of defendant's counsel was sustained, and the prosecutor made no further reference to the matter. Besides, it was competent to show such facts in evidence, and it was not improper for the prosecutor to mention it in his opening statement.

IX. It is further complained that the prosecuting attorney, and other attorneys hired to assist him, were unruly and made many prejudicial statements in the progress of the trial. The case appears to have been fought with a good deal of pertinacity on both sides. A careful examination of the record shows that the attorneys for the defendant were quite as vigorous in their protestations as the counsel for the State. We are not pointed to any particular instance where the counsel for the State transcended the rules of propriety in the conduct of the case and was sustained by the court; nor, by careful examination of the record, do we find any instance of that kind.

**Unruly Attorneys.**

There being no error in the conduct of the case, the judgment should be affirmed.

It is so ordered. *White, C.,* concurs; *Railey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of MOZLEY. C., is hereby adopted as the opinion of the court. All concur.