STATE v. RAY JOHNSON, Appellant.—No. 38217.—169 S. W. (2d) 339.

Division Two, March 25, 1943.

*Lincoln & Lincoln* for appellant.

*Roy McKittrick,* Attorney General, *W. J. Burke,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted in the circuit court of Greene county, Missouri, on a charge of knowingly receiving money without consideration from the proceeds of the earnings of a woman engaged in prostitution as defined by Sec. 4399, Mo. Rev. St. Ann., 1939. Defendant was sentenced to imprisonment in the penitentiary for a term of five years. He appealed.

Appellant briefed only two questions upon which he seeks a reversal of a judgment of conviction. First, that the evidence was insufficient to sustain a conviction; second, that the verdict of the jury in assessing appellant's punishment at imprisonment in the penitentiary for a term of ten years disclosed it was the result of passion and prejudice. The state to sustain the charge introduced the following evidence: Mildred Peters testified that she was eighteen years of age and lived at Seymour, Missouri; that she and one Melba Cummings, age sixteen, also of Seymour, went to Springfield, Missouri, on December 7, 1941; that they visited a restaurant and later a place referred to in the evidence as the Green Light or Bloody Bucket where they met Wanda Fox who later that evening introduced the witness to the defendant Ray Johnson who lived at 214½ South Campbell street. It was conceded that Johnson was in charge of the place at that address being operated as a rooming house. It was located on the second floor and contained about eight rooms. Mildred Peters further testified that Wanda Fox had a room at the Johnson place and she remained there with her that Sunday evening; that during the course of the evening a man came to the house and she and Wanda went to a reception room where the man and Johnson were; that the man selected her and she went with him to Wanda's

room; that he gave her two dollars and she took one dollar to the reception room to defendant who returned fifty cents; that the defendant said: "You got the first date, did you?" The witness further testified that thereafter she returned to the room and had intercourse with the man; that this same procedure was followed at least three times that evening and on each occasion she received two dollars and gave the defendant fifty cents before having intercourse with the visiting men; that after the second occurrence the defendant gave her a room of her own; that on one occasion when a visitor came, there were four girls in the reception room. One of the alleged visitors testified for the state and corroborated the evidence of witness Peters. Mildred Peters further testified that on Monday night, December 8, the same procedure was followed until police officers paid the place a visit and arrested the witness, the defendant, two men and Melba Cummings. Melba Cummings, a witness for the state, testified that she was at the Johnson rooming house on Monday evening; that while there she and other girls were in the reception room when a man came and selected her; that they went to Mildred's room where she collected two dollars from the man, returned and paid the defendant fifty cents and then filled the date with the man. The man in question testified for the state and corroborated her testimony. Melba Cummings testified that she filled two dates before the police arrived.

Appellant urges in his brief that the state failed to prove he received the money paid him by Mildred Peters without consideration because she testified that the money was for her room. The fallacy of that argument lies in the fact that appellant was paid one dollar before the witness was assigned a room. There is another reason, however, why that contention cannot be sustained. The state's evidence showed that appellant at no time made any stipulated charge for a room but collected fifty cents every time one of the girls went to a room with a man and collected two dollars. In other words, appellant was knowingly taking a portion of all money witness Peters was earning in prostitution. Appellant's remark to witness Peters when she paid him the first fifty cents, "You got the first date, did you?" and the fact that thereafter the same night he received fifty cents at least on two more occasions, showed beyond doubt that appellant had full knowledge of how the money was being earned by witness Peters. The evidence justifies a finding that appellant had an understanding with Mildred Peters that he would receive fifty cents each time she filled a date with a visiting man. See State v. Howe, 287 Mo. 1, 228 S. W. 477, and State v. Ackerman, 315 Mo. 219, 285 S. W. 739.

Appellant in his brief says:

"Sexual relationship is, of course, necessary to prove prostitution, and, therefore, an important element of the crime. *One fact which must be proven* is that the money alleged to be received was received

from prostitution which in turn demands proof of sexual relationship. One can hunt from the beginning to the end of the testimony in this case and nowhere is there any proof of any sexual relationship in the record.''

This argument is based on the theory that the evidence of witness Peters, that she had intercourse with the man who paid her two dollars, and the evidence of witness Cummings, that she was paid two dollars for filling dates with men, did not prove that these witnesses had sexual intercourse with the men. To this we cannot agree. Appellant relies strongly upon the case of People v. Howard, 76 Pac. (Cal.) 1116. In that case the defendant was convicted on a charge of statutory rape. The prosecuting witness, sixteen years of age, testified that the defendant had intercourse with her. It was in evidence that the girl did not complain of the assault for a number of months. The case from an evidentiary standpoint was extremely weak. There was no showing that the girl understood the word ''intercourse'', or that she understood the meaning of the term ''sexual intercourse.'' We have no fault to find with that case. In the case before us the circumstances play an important part. We are of the opinion that when the word ''intercourse'' was used in the questions and answers everyone taking part in the trial knew and understood that the word had reference to ''sexual intercourse.'' This becomes apparent when we consider the manner in which the cross-examination was conducted. Note the questions asked:

''Q. How long did you stay up there? A. Stayed up there until about 10:30.

''Q. Now up to that time you hadn't engaged in any prostitution had you? A. Yes, sir.

''Q. Once or how many times? A. Once.

''Q. Just once? A. Yes, sir. . . .

''Q. Did you know who it was? A. No, sir.

''Q. It was some man that came in there? A. Yes, sir.

''Q. What did you do, walk up to him and proposition him or what occurred? A. No, I never. He came in and asked to see the girls and Wanda and I were in the room and we came out.

''Q. There weren't any other girls there except you two? A. Yes, sir, there were three there. . . .

''Q. After this first man left you gave them fifty cents did you? A. I gave it to Mr. Johnson.

''Q. Where was he? A. He was out there in the waiting room.

''Q. When you handed the money to him did you say anything to him? A. He said, 'You got the first date did you?', and I said 'Yes'. . . .

''Q. Now I will ask you this question, Miss Peters, you never did say anything to Ray Johnson at any time about paying him this money

that you had earned in prostitution, or have any arrangement with him did you, with him himself? A. No, sir.''

Again, in the cross-examination of witness Cummings the following questions were asked:

''Q. How long have you been engaged in prostitution? A. In what?

''Q. How long have you been having dates with men for money? A. I never until I come up here to Springfield.''

It must also be noted that when the prosecuting attorney asked the witness Peters as to when she paid appellant fifty cents the question was asked as follows:

''Q. Now was that before the act of intercourse? A. Yes, sir.''

Also note that on cross-examination witness Peters was asked if up to 10:30 on Sunday night she had engaged in any prostitution, and she answered ''yes''. The word ''prostitution'' is used in the statute in defining the offense for which appellant was convicted. As to the meaning of the word ''prostitution'', see 50 C. J., sec. 1. It is therefore evident that when the word ''intercourse'' was used it carried the meaning ''sexual intercourse''. See Webster's New International Dictionary (2 Ed.), Unabridged; State v. Bailly, 137 N. W. (S. D.) 352, 353 (2, 3); State v. Devorss, 221 Mo. 469, 120 S. W. 75.

 There is no merit in the assignment that the verdict of the jury was the result of passion and prejudice because it carried a punishment of ten years' imprisonment in the penitentiary. The legislature has seen fit to fix a punishment of from two to twenty years' imprisonment for the offense. Appellant urges that since he was never before convicted of crime the verdict cannot be explained except that it was the result of passion and prejudice. We may suggest that the jury may have been somewhat inflamed because appellant was collecting toll from the money earned by girls sixteen and eighteen years of age in prostitution. We have no reason to disturb the verdict. The trial court saw fit to reduce the punishment to five years. Certainly appellant has no basis for complaint.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.