245 S.W.2d 859 (1952)
STATE
v.
THURSBY.
No. 42913.
Supreme Court of Missouri, Division No. 1.
February 11, 1952.
*861 Bruce Barnett, Kansas City, for appellant.
J. E. Taylor, Atty. Gen., Richard F. Thompson, Asst. Atty. Gen., for respondent.
VAN OSDOL, Commissioner.
Defendant Ray Thursby was convicted of the crime of receiving money, without consideration, from the proceeds of the earnings of a woman engaged in prostitution. R.S.1949, Section 563.040, V.A.M.S. His punishment was assessed by the jury at two and one-half years in the penitentiary. He has appealed from the ensuing judgment.
Herein upon appeal defendant-appellant contends (1) the indictment charging the offense was insufficient and a departure from the language and meaning of the statute, Section 563.040, supra; and (2) there was no substantial evidence introduced tending to show defendant's guilt. Defendant-appellant further contends (3) that the verdict of the jury was a special one, but did not state all of the essential elements of the offense, and so was insufficient as a finding of guilt of the crime charged; (4) that the trial judge without cause made a remark to defendant's counsel which was so humiliating to counsel that his efficiency in the further trial of the cause was affected, and the defendant was thereby prejudiced and put in an unfavorable position before the jury; (5) that the court failed to poll the jury as requested by defendant's counsel; (6) that error was committed in discharging, upon voir dire, two veniremen, Kraus and Brinton; and (7) that the trial jury was illegal in that it was selected from a panel of twenty-four which in turn was drawn from a general panel of veniremen not legally constituted.
Section 563.040, supra, under which defendant was charged and convicted, is as follows, "* * * any person who shall knowingly accept, receive, levy or appropriate any money or other valuable thing, without consideration, from the proceeds of the earnings of any woman engaged in prostitution, shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment for a period not less than two nor more than twenty years."
The indictment averred that defendant "on or about the 27th day of April, 1950, at the County of Jackson and State of Missouri, did then and there unlawfully, feloniously and knowingly accept, receive, levy and appropriate a sum of money, without consideration, from the proceeds of the earnings of one Shirley Mae Cole, who was then and there engaged in prostitution * * *."
(1) Concerning the sufficiency of the indictmentdefendant-appellant contends the indictment does not follow the language of the statute, but differs materially by the insertion of the words "who was then and there" between the word "Cole" and the word "engaged." An essential element of the offense, against which the statute, Section 563.040, supra, is leveled, is that the money received by a defendant was money earned by a woman in prostitution. State v. Howe, 287 Mo. 1, *862 228 S.W. 477. And defendant-appellant contends the language of the indictment is susceptible to a construction and admits of a finding of guilt, although the earnings received by defendant may have been earned otherwise than in prostitution. (In this connection we have examined the state's principal Instruction No. 2 which authorized a conviction only upon the finding that defendant "did knowingly, unlawfully and feloniously accept, receive or appropriate to his own use any amount of lawful money of the United States from earnings made by the witness, Shirley Mae Cole, by engaging in prostitution, and that said money was accepted, received or appropriated to his own use by defendant without any consideration therefor independent of said witness engaged in prostitution as aforesaid * * *.") Defendant-appellant argues that the phrase "engaged in prostitution," as used in the statute, modifies and refers to "earnings of" a woman, and that this reference is changed to "a mere descriptio personae" by the use of a subordinate clause, "who was then and there engaged in prostitution." The language of the indictment is not the exact language but is substantially that of the statute. See State v. Carter, Mo.Sup., 64 S.W.2d 687. It sufficiently apprised defendant of the charge he was to be prepared to meet. We think the indictment no more than the statute admits of the interpretation that money charged as having been received by defendant could have been from earnings of a woman other than in prostitution. An information in form like the indictment in the instant case was tacitly approved by this court in the case of State v. Ackerman, 315 Mo. 219, 285 S.W. 739.
(2) There was evidence introduced tending to show that defendant, a bellboy at the Gladstone Hotel, entered into an understanding or agreement with one Frank Edward Myers that defendant would call him, Myers, in response to any arrangement which defendant might make with men at the Gladstone Hotel who desired sexual intercourse with one Shirley Mae Cole who was then cohabiting with Myers in another hotel in Kansas City. On the evening of the 25th (or 26th) day of April, 1950, defendant called Myers by telephone and, in response to the telephone call, Myers accompanied Shirley to the Gladstone Hotel where they were met by defendant at the elevator. Defendant conducted Shirley to a room on the next floor. Shirley testified confirming these facts, and further stated that she had sexual intercourse in the room with a man, a stranger to her, for which she received $10 and, upon leaving the room, she gave $4 thereof to defendant.
This evidence was substantial and sufficient in sustaining a finding of defendant's guilt of the crime charged, notwithstanding such evidence consisted of the testimony of Shirley, a prostitute, and of Myers, her pimp or procurer. It is true it was shown that Myers had been formerly convicted of felonies; that he was living in adultery with Shirley at the time of the alleged offense; that she was then pregnant by Myers; and that, as stated, he was acting as her procurer. Furthermore, it is true that Myers was also shown to have been charged with the violation of Section 563.040, supra; that he had entered a plea of guilty to the charge; and that he was awaiting the assessment of his punishment. These facts were no doubt considered by the jury in passing upon the credibility of the witnesses, Shirley and Myers, and in weighing their testimony, but such facts did not affect the competency of these witnesses, nor did such facts destroy the substantiality of their testimony. It is a settled rule that the jury has the peculiar province of judging the credibility of the witnesses and the weight and value of their testimony. The appellate court does not interfere with a jury's verdict supported by substantial evidence. State v. Cohen, Mo.Sup., 100 S.W.2d 544; State v. Biles, Mo.Sup., 2 S.W.2d 756; State v. Miller, 318 Mo. 581, 300 S.W. 765; State v. Hawkins, Mo.Sup., 210 S.W. 4.
(3) The jury's verdict was as follows, "We, the jury find the defendant, Ray Thursby, guilty of Receiving Earnings from a Prostitute as charged in the Indictment and assess his punishment at two and a half years in the Missouri Penitentiary."
*863 We have the view that the verdict plainly stated the jury's intent to find defendant guilty "as charged in the Indictment." The language contained in the verdict ("of Receiving Earnings from a Prostitute") does not even purport to set out all of the essential elements of the crime of which defendant was charged; however, the language ("of Receiving Earnings from a Prostitute") was merely surplusage, and did not have the effect of changing the general verdict into a special one, inasmuch as the jury clearly expressed the intention to find the defendant guilty of the crime as charged in the indictment. State v. Glazebrook, Mo.Sup., 242 S.W. 928; State v. McCorkendale, Mo.Sup., 300 S.W. 815. See also State v. Darby, Mo.Sup., 165 S.W.2d 419. The case of State v. DeWitt, 186 Mo. 61, 84 S.W. 956, is inapplicable. See again State v. Glazebrook, supra.
(4) Relating to the contended error in the trial court's remark to defendant's counsel. Defendant's counsel had asked the witness, Shirley, if she had given money (earned in prostitution) to one Thomas. The trial court sustained an objection on the ground of immateriality. Thereupon defendant's counsel stated, "I am doing exactly what he (counsel for the state) has just done. I permitted him to roam far afield." The trial judge then remarked, "That character of statement is childish and shouldn't be made in the trial of a case. The question is whether this particular question is admissible or not." The record does show that the trial judge was somewhat petulant, but the remark of the judge in no way indicated how he thought the case ought to be decided, nor did the remark tend to prevent the jury from performing their duties in an impartial manner. The mere criticism of counsel is not ordinarily considered a ground for reversal. State v. Teeter, 239 Mo. 475, 144 S.W. 445. The statement of defendant's counsel was not called for or justified in the situation. The reprimanding of counsel during the progress of a trial is largely within the discretion of a trial court. State v. Long, 336 Mo. 630, 80 S.W.2d 154.
(5) The record shows that, upon the return of the verdict by the jury, defendant's counsel requested of the trial court and the trial court acted as follows,
"Mr. Hill: I would like to have the jury polled, Your Honor.
"The Court: Is this, ladies and gentle men, your verdict in this case?
"Jurors: Yes, it is."
Apparently the trial judge did not ask of each juror individually if the juror had concurred in or had assented to the verdict. A litigant has the right to request and it is error to refuse a litigant's request for a poll of the jury. In polling a jury, each juror should be questioned individually, so that he may by his answer clearly say that he did or did not concur in the verdict as returned. Norvell v. Deval, 50 Mo. 272; State v. Reppetto, 66 Mo.App. 251; 23 C.J.S., Criminal Law, § 1392 c., pp. 1071-1072. A party may expressly waive his right to a poll of the jury. State v. Hubbs, 294 Mo. 224, 242 S.W. 675. In our case defendant in the first instance not only did not expressly waive his right, but expressly requested that the jury be polled. But defendant did not complain of or object to that which the trial court did in compliance with the initial request, nor did defendant subsequently point out to the trial court or object on the ground that the jurors individually had not been questioned. While it seems the defendant was then satisfied with the sufficiency of the trial court's inquiry, and should not now be heard to assert error, we, in view of our ruling of the contention (7), infra, find it unnecessary to actually rule the instant contention.
(6) Counsel for the state inquired at length asking the 24 veniremen, upon voir dire, concerning their views of the credence and weight to be given the testimony of a prostitute, and to the testimony of a procurer. The interrogation was objectionable because it tended to commit the jurors to an opinion, in advance of the trial, upon the credibility of the witnesses and weight of their testimony. It was tantamount to asking the jurors how they would decide the issues of the *864 case before they had seen the witnesses upon the witness stand and heard them testify, and before they had heard the testimony of other witnesses relating to the facts and circumstances of the case. State v. Gifford, Mo.Sup., 186 S.W. 1058; State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22. However, defendant's counsel participated in this line of inquiry upon voir dire which inquiry did disclose that two jurors, Kraus and Brinton, were of the view that in no circumstances should any weight whatsoever be given to the testimony of a prostitute or of a procurer. Certainly it should not be said that the discharge of the veniremen, Kraus and Brinton, was an abuse of the trial court's discretion. Trial courts have a wide discretion in determining the qualifications of a juror. State v. Salts, 331 Mo. 665, 56 S.W.2d 21.
(7) Defendant-appellant contends the general panel of veniremen (from which the venire of 24 were chosen for voir dire examination) was illegal because a large number of the veniremen constituting the general panel were excused from service by a person other than the judge who was authorized by law to do so. This asserted nonconformity with or violation of the provisions of the law applicable to excusing jurors in Jackson County was not called to the attention of the trial court until the filing of the motion for a new trial. In his motion for a new trial, defendant-appellant assigned the fact of nonconformity with the law as a ground for his motion; and defendant further stated in his motion that he had had no knowledge of the violation of the statute until after the trial of the instant cause had been completed and the verdict returned, and consequently had had no opportunity, prior to the filing of the motion for a new trial, to challenge the array or to move to quash the panel.
R.S.1949, Section 497.160(1), V.A.M.S., provides as follows, "Where the circuit court is composed of more than one division except as herein provided, one general panel of jurors shall be drawn for all civil or criminal divisions, the number of names to be drawn for such general panel to be determined by the judge designated by a majority of said judges of said court. Said panel shall be drawn and summoned as provided in sections 497.170 and 497.230, and all jurors so summoned shall appear before such judge of said circuit court, which said judge shall hear and determine all excuses of said jurors. No clerk, deputy, lawyer or other officer of court may in any manner assist or aid any juror so summoned in presenting any excuses that said juror may have to avoid service."
The facts developed at the hearing (upon the stated assignment) were as followsin the forenoon of Monday, November 20th, the day preceding the commencement of the trial of the instant case, a general panel of 233 veniremen reported to the jury assembly room for jury service. At that time the judge who had been designated as the "jury judge" personally appeared at the assembly room and personally excused 17 veniremen; he also made signed notations on the returned writs of jury summons of 33 veniremen indicating these particular veniremen were to be excused, but he did not actually excuse these 33 at the time. Later the same morning, the judge directed the jury commissioner to excuse 65 veniremen, including the 33 the judge had personally indicated (by the signed notations) were to be excused; and the 65 to also include as many as 32 additional veniremen "who wanted to get off." This directive was communicated by the jury commissioner to the deputy sheriff, in charge of the general panel of the jury assembly room, who apparently undertook to carry out the directive, and without the presence of the judge. The deputy sheriff excused the 33 the judge had noted were to be excused; and he then "asked for the others and they came up and he let these go."
These facts are identical, in effect, to the facts of the case of Doran v. Ross, 240 Mo.App. 823, 221 S.W.2d 756. In the Doran case a new trial was granted on the specified ground that a deputy sheriff, instead of the judge authorized to do so, excused from service a large number of veniremen who constituted a part of the regular general panel selected for service at the session of the court at *865 which the case was tried. The order granting the new trial was affirmed upon appeal.
The reading of the Section 497.160, supra, enacted by the Sixty-fourth General Assembly, Vol. 1, Laws of Missouri, 1947, p. 346, discloses that the legislature contemplated that the designated judge, and he alone, shall personally hear and determine the validity of all the excuses presented by veniremen for dismissal from jury service; especially is this personal and official responsibility made clearly mandatory by the last sentence of the statute"No clerk, deputy, lawyer or other officer of court may in any manner assist or aid any juror so summoned in presenting any excuses that said juror may have to avoid service."
Now, no matter how the deputy sheriff determined the particular 32 additional veniremen whom he "let go," it is clear he did that which the statute expressly directs the jury judge to personally do. From this we believe it clearly follows that the general panel, from which the panel of 24 was drawn for qualification upon voir dire and from which were ultimately selected the 12 jurors who were sworn to try the cause, had been reduced by the deputy sheriff in violation of the statute, and that the fundamental legal status of the trial jury ultimately selected had been destroyed so that the trial jury was not a legally constituted instrumentality for the trial of the factual issues of the cause.
There was no evidence introduced tending to show that the deputy sheriff did anything in connection with excusing the 32 veniremen which was actuated by any improper motive. But the statute is clearly worded as tightly requiring the judge's personal hearing and determination of excuses so that no clerk, deputy, lawyer or other officer of court can do anything, in such connection, which might be actuated by an improper motive.
It is the general rule, however, that a challenge to the array, based on irregularity in the selection of the jury panel, must be made in writing prior to trial and verdict. State v. Darrow, Mo.Sup., 104 S.W.2d 249; State v. Garrett, 285 Mo. 279, 226 S.W. 4. But this rule, as noted by the Kansas City Court of Appeals in the Doran case, has its exceptions. In the case of State v. Rouner, 333 Mo. 1236, 64 S.W.2d 916, 921, 92 A.L.R. 1099, it was said that in the cases where it has been held that an objection based upon asserted irregularity of the selection or summoning of a jury panel comes too late when made for the first time in the motion for a new trial, "the record showed that the defendant had knowledge of the grounds of objection before the verdict was returned or that he or his counsel had means of knowledge in the records of the trial court and of the particular cause." In the instant case, as in the Doran case, it was stated in the motion for a new trial that defendant did not learn of the illegality until after the trial was completed. The Kansas City Court of Appeals was of the opinion that, in view of the large number of divisions of court in Jackson County, it was not at all surprising that defendant's counsel failed to learn of the irregularity until after the verdict was returned. And, in our case, the transcript of the evidence introduced in the trial of the cause further indicates that, on the day the veniremen were excused, defendant's one attorney was engaged in taking depositions in the prosecutor's office at the courthouse in Kansas City. While we do not know the time of the taking of the depositions was coincidental with the stated irregularity in the excusing of the veniremen, yet we think the fact that defendant's counsel was busy elsewhere on that day tends to show defendant's counsel did not know of the irregularity. A litigant should not be obliged to suppose officials charged with the responsibility of the selection and supervision of juries will not fulfill their duties in accordance with the law. On the contrary, the litigant is entitled to assume such officers will scrupulously fulfill their duties. There was no evidence that defendant or his counsel knew of the situation, or that they had the means of knowledge in the records of the case in the trial court; and the hearing of evidence upon the assigment *866 was conducted on the theory that they had not priorly known of the irregularity.
It will not do to treat lightly with a matter which is so vital to the administration of justice and which the Legislature has clearly recognized as of mandatory import in the protection of litigants, necessarily including defendant-appellant herein, who submit the decision of factual issues to a jury. State v. Rouner, supra; Doran v. Ross, supra.
The judgment should be reversed, and the cause remanded.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C, is adopted as the opinion of the court.
All of the Judges concur.